# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HENDRICK CONSTRUCTION COMPANY, INC. v. C. E. THURSTON
AND SONS, INC.

March 6, 1967.

Record No. 6329.

Present, All the Justices.

G. Kenneth Miller (Joe T. Mizell, Jr.; Mizell, Gayle & Binns; May, Garrett, Miller and Newman, on brief), for the plaintiff in error.

John P. Ackerly, III (Denny, Valentine & Davenport, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

C. E. Thurston and Sons, Inc., the plaintiff, filed a motion for judgment against Hendrick Construction Company, Inc., the defendant, seeking to recover the sum of $5,170.24. The trial court, sitting without a jury, entered final judgment in favor of the plaintiff for the full amount of its claim, and the defendant was granted this writ of error.

The controversy involves the construction of the Science Building at the Richmond Professional Institute. On January 12, 1962, the defendant, as general contractor, entered into a contract with the Commonwealth for the construction of the building. Thereafter, the defendant contracted with Dixie Plumbing and Heating Company, Inc., whereby the latter agreed to perform the plumbing and heating work on the project. Dixie, in turn, contracted with the plaintiff for the insulation of the structure.

On December 5, 1962, Dixie was adjudicated bankrupt, at which time it was indebted to the plaintiff in the sum of $5,624.01 for labor and materials furnished to Dixie. The plaintiff received $453.77 in the bankruptcy proceedings, leaving a balance due on its claim of $5,170.24, the amount involved in the present action.

The plaintiff alleged in its motion for judgment that the defendant was liable to it because the defendant "did not require and Dixie did not furnish, as a part of such contract between them, a statutory payment bond, as required by Section 11-20 of the Code of Virginia, obligating the principal and surety on such bond to pay all persons, including Plaintiff, who had and fulfilled contracts directly with Dixie for furnishing materials in the prosecution of the work provided for in said contract between Hendrick and Dixie."

The plaintiff also alleged that the defendant's contract with the Commonwealth imposed a duty upon the defendant to require a bond of Dixie for the benefit of the plaintiff.

The defendant was negligent, the plaintiff contended in its motion for judgment, in failing to perform its statutory and contractual duty of requiring a bond of Dixie and, as a result, the plaintiff was "deprived of the benefit of a surety of Dixie," thus obligating the defendant to pay the plaintiff's claim. The plaintiff further contended that it was a third party beneficiary of the contract between the Commonwealth and the defendant and that since the defendant violated its contractual duty to require a bond of Dixie, the defendant was liable to the plaintiff for the latter's claim.

Code, § 11-20, upon which the plaintiff relies, is a part of Chapter 4 of Title 11 of the Code, entitled "Public Contracts in General." The Code section has been amended since this controversy arose; but it was worded at that time, in its pertinent provisions, as follows:

\* \* \* \*

"No contractor, as the lowest responsible bidder, shall subcontract any work required by the contract except under the following conditions: each subcontractor shall furnish, and the contractor shall require as a part of the agreement between the subcontractor and the contractor, a payment bond in the amount of 50% of the work sublet to the subcontractor which shall be conditioned upon the payment to all persons who have, and fulfill, contracts which are directly with the subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract. Each such bond shall be construed, regardless of its language, as incorporating, within its provisions, the obligation to pay those persons who furnish labor or materials as aforesaid; provided, however, that subcontracts between the contractor and a manufacturer or a fabricator shall be exempt from the provision requiring a payment bond and provided further that subcontracts for less than $2,500.00 each are also exempt hereunder. Provision for said payment bonds shall be made a part of each agreement between the owner and contractor.

". . . Persons who have, and fulfill, contracts which are directly with subcontractors for performing labor and furnishing materials in the prosecution of construction work defined in § 11-17 shall have a direct right of action against the obligors and sureties on the bond required herein of the subcontractors. . . ."

\* \* \* \*

The contract between the Commonwealth and the defendant contained the following provision, upon which the plaintiff relies:

"17.  Contract Security.

*    *    *    *

"(b)    The successful bidder (contractor) shall not subcontract any work required by the contract except under the following conditions:

"Each subcontractor shall furnish, and the contractor shall require as a part of the agreement between the subcontractor and the contractor, a payment bond in the amount of 50% of the work sublet to the subcontractor which shall be conditioned upon the payment to all persons who have, and fulfill, contracts, which are directly with the subcontractor for performing labor and furnishing materials in the prosecution of the work provided for in the subcontract. Every such bond shall be construed, regardless of its language, as incorporating, within its provisions, the obligation to pay those persons who furnish, labor or materials as aforesaid."

The plaintiff contends that the defendant is liable to it upon either of two theories. The first is that the defendant was negligent in failing to perform its statutory and contractual duty of requiring a bond of Dixie and that the plaintiff is entitled to recover the amount of its claim as damages for such failure. The second is that the defendant breached its contract with the Commonwealth in failing to require a bond of Dixie and that the plaintiff, as a third party beneficiary of that contract, may recover for such breach. The plaintiff further contends that under the statute and the contract, the defendant "was obliged to ascertain if the required bond had been furnished."

The defendant, on the other hand, contends that the statute and the contract merely required it to "obligate the subcontractor to provide such bond" and that "no duty is placed upon the contractor to police the subcontractors action in the posting of the bond, to determine if the bond is properly written, or to take any other action."

The crucial issue, then, in determining whether the plaintiff is entitled to recover under either of its theories, is whether the defendant "was obliged to ascertain if the required bond had been furnished."

The trial court, in a written opinion, held that "the burden is placed upon the general contractor to require of his sub-contractors a bond that will guarantee payment to those who furnish materials

or labor to such sub-contractor." The court was of opinion that the required bond was one "with corporate surety." The court stated that the defendant was obligated "to see to it that these laborers and materialmen are thus protected against default in payment by those subcontractors selected by the general contractor."

The findings of the trial court are incorrect for two reasons. In the first place, the statute and the defendant's contract with the Commonwealth did not impose upon the defendant the duty to require a bond of Dixie and "to see to it" that Dixie, in fact, furnished such a bond.

The statute and the contract provided that the general contractor "shall require *as a part of the agreement* between the subcontractor and the contractor, a payment bond." The words "as a part of the agreement" modified and limited the meaning of the word "require" and were definitive of the general contractor's duty.

We construe the statutory and contractual language here in dispute to have imposed upon the defendant the mere obligation to include in its contract with Dixie a requirement that the latter furnish a payment bond. It is not questioned that the defendant discharged that obligation.

To adopt any other construction of the statute and contract would require us to delete therefrom the words "as a part of the agreement" or to add thereto language which would have required the general contractor "to see to it" that a bond was furnished. This, obviously, we cannot do. Such amendatory action must be left to the legislature.

The legislature took such action in 1962, subsequent to the dates of the contracts here involved. Code, § 11-20 was amended to add a provision delineating the liability of a contractor who "fails to require from a subcontractor the bond provided for herein." That liability was limited, however, to "a direct right of action against the obligors and sureties on the bond" required to be furnished by the general contractor to the contracting governmental agency.

We cannot give retroactive effect to the 1962 amendment to Code, § 11-20 so as to provide the lacking ingredient in the plaintiff's case, that is, to afford the plaintiff a right of action against the defendant which it did not have under the old statute. And we certainly cannot enlarge that right of action, limited as it is by the new statute to the general contractor's bond, to one which would hold the defendant individually liable without pecuniary limit.

■ As corollary to its contentions, the plaintiff cites paragraph

21 (c) of the contract between the Commonwealth and the defendant, wherein it was provided:

> "The Contractor agrees that he is as fully responsible to the Owner for the acts and omissions of his sub-contractors and of persons either directly or indirectly employed by them, as he is for the acts and omissions of persons directly employed by him."

The plaintiff's argument in connection with this provision of the contract seems to be that since Dixie omitted furnishing a payment bond, the defendant became liable to the plaintiff for such omission.

This type of argument is generally described as "attempting to pull one's self up by one's own boot straps" and is seldom successful. The ready answer to the argument is that the contractual provision was for the protection of the Commonwealth and not the plaintiff. The plaintiff was one of those against whose acts and omissions the protection was provided.

As has been noted, there is a second reason why the findings of the trial court are incorrect. The court was of opinion that the defendant was obligated to require of Dixie a bond guaranteeing payment to those who furnished labor and material to Dixie—a bond described by the court as one "with corporate surety." That was also the plaintiff's view. It alleged in its motion for judgment that Code, § 11-20 obligated the defendant to require of Dixie a bond "obligating the principal *and surety* on such bond to pay" all those fulfilling contracts with Dixie. The plaintiff also alleged that as the result of the defendant's failure to require a bond of Dixie the plaintiff "has been deprived of the benefit of *a surety* of Dixie."

The bond required of Dixie by the statute, as it was worded on the dates of the contracts here involved, was merely "a payment bond." In that portion of the statute requiring such a bond, no mention was made of surety, corporate or otherwise, nor was there any provision for approval of the bond by anyone. The defendant's contract with the Commonwealth was also silent in these respects. All that was required, apparently, was the subcontractor's undertaking, in the form of a bond signed in his individual name, to pay his suppliers of labor and material—an undertaking which he was obligated to perform in any event.

It is true that another portion of the statute gave to such suppliers of labor and material "a direct right of action against the obligors and sureties on the bond required herein of the subcontractors." But that provision of the statute could have applied only where the contracting

governmental agency had required, and the subcontractor had given, a bond with surety. The right of action granted by the statute would seem to have been of little value where, as here, there was no statutory or contractual requirement for surety in the first place.

We can perceive of no theory under which the defendant may be held liable for the plaintiff's claim for failing to require of Dixie a bond which, if furnished, would have been of no more avail to the plaintiff, once Dixie became bankrupt, than if it had never been given in the first instance.

It is obvious that the lack of a statutory requirement for surety on subcontractors' bonds resulted from legislative oversight. The defect was corrected in the 1962 amendment to Code, § 11-20, where it was provided that subcontractors shall furnish payment bonds "with surety thereon" and that "all bonds required herein shall be executed by a surety company authorized to transact business in the Commonwealth of Virginia as surety." These legislative changes came too late, of course, to be of aid to the plaintiff.

We conclude that the defendant is not liable for the plaintiff's claim. That conclusion is consistent with a previous holding of this court in a situation identical with the one now before us. In the case of *Noland Company, Incorporated* v. *Hendrick Construction Company, Inc.*, Record No. 6124, 205 Va. lxxix, the same question was presented involving the same contractual provisions, the same statute, the same insolvency of Dixie and, with but one exception, the same parties— Noland was there the plaintiff while Thurston is the plaintiff here.

In that case, the Law and Equity Court of the City of Richmond decided that the defendant was not liable to Noland on its claim for materials furnished to Dixie. Noland sought a writ of error in a petition which fully discussed the same theories of recovery upon which the plaintiff here relies.

On October 12, 1964, we rejected the petition and refused a writ of error in the *Noland* case, stating in our order that the decision of the Law and Equity Court of the City of Richmond was "plainly right." Code, § 8-476.

The judgment appealed from will be reversed and final judgment will be entered here in favor of the defendant.

*Reversed and final judgment.*

EGGLESTON, C.J., and
SPRATLEY and BUCHANAN, JJ.,
concur in the result.